## Blue Grass Traction Co. v. Ingles.

(Decided November 1, 1910.)

### Appeal from Scott Circuit Court.

1. Personal Injuries—Street Railway Companies—Instruction.—In an action against a street railway company to recover damages for personal injuries, the motorman is only required to exercise ordinary care with the means at his command to stop the car in order to prevent a collision, and it is error to instruct the jury that the motorman is under a duty to stop the car without adding "if he can do so in the exercise of ordinary care with the means at his command."

2. Same.—It is not reversible error for the trial court in civil cases to fail to give instructions that are not requested.

3. Pleading—Special Damages—Instructions.—The petition in an action to recover damages for personal injuries averred that the plaintiff had and would expend $50.00 for medical treatment, and had lost time of the value of $48.00. These items constituted claims for special damages, and the jury in the instructions should have been limited in the assessment of damages on account of medical services and time lost, to the sum claimed in the petition.

4. Damages—Special and General—Pleading.—It is not essential to the statement of a good cause of action that the pleading should state in detail the items of damage that the plaintiff has sustained by reason of the injuries complained of. The pleader may in a general way describe the negligence, and the nature and extent of the injuries; but if it is desired to recover, in addition to general damages, special damages as for lost time and expenses incurred in effecting a cure, the pleading must state the amount sought to be recovered for special damages and the instruction should limit the recovery on this account to the amount mentioned in the pleading.

5. Special Damages—Pleading—Instructions.—If when the petition is filed or when the trial is had the plaintiff does not know the total amount that he will have to expend in effecting a cure, or the value of the time he will lose, he should state an amount large enough to cover the sum that he will expend, or lose, on this account, and if the evidence justifies it the jury should be directed to award such a sum, not exceeding the amount claimed as will compensate him for the amount expended or that may thereafter be expended in effecting a cure, and for the time lost, and that will be lost.

6. Special Damages—Lost Time.—When a recovery of special damages is sought for lost time there may be a recovery for lost time without reference to whether the injury is permanent or temporary; and it may be in addition to the amount that is allowed for permanent or temporary impairment of the power to earn money, but it should end when the allowance for impairment begins.

7. Special Damages—Lost Time.—Impairment of the Power to Earn Money.—In actions for personal injuries, there may be a recovery for time wholly lost as well as for the partial impairment of the power to earn money from the time the injured person is able to earn some and until a complete cure has been effected.

8. Special Damages—Lost Time.—When it is sought to recover for lost time, as well as for the impairment of the power to earn money, the jury should be instructed that if they allow for lost time and also allow for the impairment of the power to earn money that the allowance for impairment of the power to earn money should begin when the allowance for lost time ends.

STOLL & BUSH for appellant.

FORD & FORD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee in her petition against the appellant company to recover damages for personal injuries alleged to have been sustained by the negligence of its employes, charged that she was driving south in a buggy on a road partly occupied by the tracks of the company when one of its traction cars coming north on its track frightened the horse causing him to back the buggy on to the track in front of the approaching car, that struck it, thereby causing her to be thrown out on the ground. That the employes operating the car saw or by the exercise of ordinary care could have seen that her horse was frightened and unmanageable and was backing the vehicle towards the track when they were at least one hundred feet from her and in ample time to have stopped the car and prevented a collision, but that the employes in charge of the car and who were running the same at a high rate of speed, made no attempt to stop or prevent the collision until the car came within a few feet of the vehicle, and when it was too late.

She averred that by reason of the negligence mentioned: "She was seriously and permanently injured about the hip and limb and her said injuries are permanent and will cause her to be a cripple for life, and her body was otherwise bruised and injured from which injuries she suffered, and continues to be sick, sore and disabled, and suffered and still suffers great pain and distress, to her damage in the sum of one thousand dollars. That she has been incapacitated and prevented from carrying on her usual occupation that of a washerwoman, from which she received eight dollars per week for a period of six weeks, to her futher damage in the sum of $48. That she has necessarily expended the sum of $25 in endeavoring to be cured of her said injuries and will hereafter necessarily expend the sum of $25 for further necessary medical treatment.

She prayed judgment for the sum of $1,098. The answer was a traverse and plea of contributory negligence, to which a reply was filed.

The evidence in behalf of appellee conduced to show that the collision occurred as stated in her petition, while the evidence for appellant company tended to show that

the horse appellee was driving did not become frightened or unmanageable or commence to back upon the track until the car was within about ten feet of the buggy, and although the motorman when he discovered appellee's peril used all the means at his command, he could not stop the car in time to prevent the collision that resulted in the injuries to her.

A trial resulted in a verdict and judgment in favor of appellee for $500, and a reversal is asked for reasons that will be noticed in the course of the opinion.

The court in instruction No. 1 told the jury that: "If they believe from the evidence that at the time the plaintiff, Ellen Ingles, was injured by the defendant's car, if she was so injured, that the employes of the defendant who were in charge of said car, saw or by the exercise of ordinary care could have seen there was danger of said car striking the plaintiff's wagon, unless the said car should be stopped, and that after they saw or could have seen by the exercise of ordinary care such danger, they could have stopped said car in time to have prevented such collision, but failed to do so, and because of such failure on the part of said employes the plaintiff sustained the said injuries, and that at said time and place the plaintiff herself was exercising ordinary care for her own safety, the jury ought to find for the plaintiff."

In instruction No. 3 they were told that: "They should award her such a sum as she has necessarily expended for medical treatment in endeavoring to be cured of such injuries and as she will hereafter necessarily expend for that purpose, if any, and in addition thereto such a sum as will fairly compensate the plaintiff for any suffering, mental or physical, which she has endured and which it is reasonably certain from the evidence she will endure as a direct and proximate result of her injury, if any, and for any loss of time occasioned by said injury, and for any reduction of her power to earn money, not exceeding in all the amount of $1,098."

The objection made to instruction No. 1 by counsel for appellant is that it imposed upon the company a higher duty than the law exacted. The argument being that the motorman in charge of the car was only obliged to exercise ordinary care with the means at his command to stop the car after he discovered or in the exercise of ordinary care could have discovered the peril in which appellee was placed, whereas the instruction authorized the jury to find the company guilty of negligence if they

believed that the employes, after they saw or in the exercise of reasonable care should have seen the danger she was in, could have stopped the car in time to have prevented the collision. That the question whether by the exercise of ordinary care with the means at his command the motorman could have stopped the car was ignored, thus putting upon the motorman the peremptory duty of stopping the car without reference to the character of care he employed in an effort to do so. This criticism of the instruction is well taken, and the failure to reduce in the instruction the duty of the motorman to the exercise of ordinary care with the means at his command to stop the car was prejudicial error. Under the instruction the jury had the right to find that the motorman was guilty of negligence in failing to stop the car, although he may have exercised ordinary care with all the means at his command to do so. Persons operating street cars are under a duty to exercise ordinary care to prevent injuring persons and to exercise ordinary care with the means at their command to stop the car when in the exercise of ordinary care it appears to be necessary to do so to prevent injuring travelers on the street or highway. But this is the extent of the duty imposed upon them by law. It is not negligence to fail to stop a car if the motorman in the exercise of ordinary care and with the means at his command cannot do so. This identical question was before us in Lexington Railway Company v. Woodward, 106 S. W. 853, and it was there said that ''the law only requires that the motorman use ordinary care in the exercise of the means at his command to avoid the danger after it is discovered or by the exercise of ordinary care could not have been discovered by him.''

It is also pointed out as error that the court failed to give an instruction defining ''ordinary care,'' but a sufficient answer to this objection is that no instruction upon this subject was requested. If counsel for appellant desired an instruction upon this point, they should have requested one, and failing to do so it was not reversible error for the court to omit the instruction. If such an instruction had been asked, we have no doubt the court would have given it. L. & N. R. Co. v. Harrod, 115 Ky. 877; South Covington & Cincinnati Ry. Co. v. Core, 29 Ky. Law Rep. 838; Nicola Bros. v. Hurst, 28 Ky. Law Rep. 87.

So much of instruction No. 3 as refers to the amount of damage the jury might allow on account of medical

treatment and for loss of time is erroneous. It will be observed that in the petition appellee averred that: ''She has necessarily expended the sum of $25 in endeavoring to be cured, and will hereafter necessarily expend the sum of $25 for further necessary medical treatment thereof.''

But the instruction permitted the jury to award her ''such a sum as she has necessarily expended for medical treatment in endeavoring to be cured of such injuries, and as she will hereafter necessarily expend for that purpose, if any.'' In other words, although the appellee limited the sum she desired to recover on account of medical expenses to $50 the instruction permitted the jury to award her any sum that she had or would necessarily expend for that purpose. If the evidence had shown that the appellee had expended less than $50 for medical treatment up to the time of the trial, and that she would not be obliged to expend any further sum for such purpose, the instruction would not have been prejudicial. But the physician who attended upon her testified that his charge against her up to the time of the trial would be $60 or $70, and that ''according to the appearance of the injury at the time of the trial, she needs to be under the supervision of a physician right along; she needs to have that place there dressed by herself or a physician; a physician ought to see her at least once or twice a week for an indefinite period of time.'' It will thus be seen that the jury might well have concluded that appellee would be obliged to expend a large sum of money for medical treatment, and under the instruction they had the right to give her on this account any amount they believed she would be required to pay out for this purpose. How much of the sum awarded appellee was given to compensate her for money that had been or might have been expended by her for medical services of course does not appear, but it is fair to assume that the jury took into consideration in assessing the damages the statements of appellee's physician upon this point and in making up the amount of the recovery allowed a sum in excess of $50 for medical treatment.

In considering the error in the instruction relative to the amount of damages that might be allowed for lost time, it must be kept in mind that the petition averred that the appellee ''had been prevented from carrying on her usual occupation that of a washer-woman, from which she received $8 per week for a period of six weeks, to

her further damage in the sum of $48." This being so we think the jury should have been directed to limit the recovery on account of time lost by reason of her injuries to this amount. But under the instruction the jury was authorized to allow without limit for loss of time and were not confined to the sum specified in the petition. In actions to recover damages for personal injuries it is not essential to the statement of a good cause of action that the pleading should state in detail the items of damage the plaintiff has sustained by reason of the injuries complained of or the amount claimed on account of each. The pleader may if he chooses describe in a general way the negligence, and the nature and extent of the injuries, and set out that the plaintiff has suffered mental and physical pain and permanent injury thereby to his damage in the amount named and under this pleading there can be a recovery in a round sum as compensation for the wrong. Gaines v. Johnson, 133 Ky. 507; Louisville Ry. Co. v. Gaugh, 133 Ky. 467; C., N. O. & T. P. Ry. Co. v. Bennette, 134 Ky. 19. But if the injured party desires to recover in addition to general damages, what are called special damages, by way of compensation for lost time, or expenses incurred in effecting a cure, then the pleading must state the amount sought to be recovered for such special damages, and the instruction should limit the recovery on this account to the amount mentioned in the pleading. L. & N. R. Co. v. Dickey, 31 Ky. Law Rep. 894; L. & N. R. R. Co. v. Roney, 32 Ky. Law Rep. 1326. The reason for the distinction in this particular in pleading general and special damages is this: The amount of the damage that has been or will be sustained on account of lost time, medical service, and the like, is generally approximately within the knowledge or information of the plaintiff. It is capable of reasonable ascertainment and can be computed with some degree of certainty. But the injury that results from mental and physical suffering or the impairment of the power to earn money is so indefinite, if not obscure that the plaintiff can not state except in a general way the damage he has sustained on this account. And so as to these elements of damage, for which a recovery is allowed an itemized or particular statement is not required the jury must from the evidence arrive as nearly as they can at what is just and right, and however unsatisfactory this rule for measuring damages may be, it is the best and

indeed the only one that has been devised. In reference to special damages, it may further be said that it sometimes happens that when the petition is filed or when the trial is had, the plaintiff does not know the total amount that he will have to expend in effecting a cure, as he may yet be under the care of a physician. In this event, the pleading should state an amount large enough to cover the sum that will be· expended on this score, and the jury, the evidence justifying it, should be directed to award the plaintiff such a sum not exceeding the amount claimed as will compensate him· for the amount that he has expended or may thereafter necessarily expend for this purpose. And so when a recovery of special damages is sought for time lost, if the plaintiff when his petition is filed, or when the trial is had, does not know how much time he will actually lose by reason of the injury, the pleading should state the damages on this account in a sum sufficient to cover the whole time that will be lost, and the jury if the evidence warrants it may be instructed to allow adequate compensation. Lost time as an element of damage means time that is totally lost, due to the fact that the injured party cannot follow any wage earning occupation, as when he is confined to his bed by the injuries. It is more than the impairment of the power to earn money, as impairment implies that the injured person can perform some service or follow some wage-earning occupation and that his ability to earn money although reduced is not totally destroyed. Of course an injury not resulting in death might totally destroy the ability to earn money, but this rarely happens. It follows, therefore, that if properly pleaded and supported by evidence there may be a recovery for lost time without reference to whether the injury is permanent or temporary. It is usually a claim made in addition to the amount that is asked for the impairment of the power to earn money, and as a rule precedes the claim for impairment, because total disability generally follows immediately upon the injury, while impairment of the power to earn money begins when the injured person is able in some degree to follow a wage-earning occupation. There ought not of course to be an allowance for lost time and for impairment of the power to earn money during the same period, as this would allow the injured party to recover double damages. Nor is it necessary that the impairment of the power to earn money should be perma-

nent to enable an injured person to obtain compensation for impairment of the power to earn money. He is as much entitled to recovery for the temporary impairment of the power to earn money as he is for the permanent impairment of the power to earn money. For instance, a person may sustain injuries that will totally disable him from employment for say six months, and that will partially disable him from following an occupation for say six months longer, and if so he is entitled to recover for the time lost as well as for the impairment of the power to earn money from the time he is able to earn some, and until a complete cure has been effected. Of course, when the injury is permanent, and there is a permanent impairment of the power to earn money, however slight it may be, there may also be a recovery for the time lost by reason of the injury, and in addition thereto for permanent impairment of the power to earn money. But, when there is a claim for special damages based on time lost, and also a claim for partial or permanent injuries and as a consequence impairment of the power to earn money for any length of time or forever, as the case may be, the allowance for the impairment of the power to earn money whether it be temporary or permanent should begin when the allowance for lost time on account of total disability ends. This measure will give to the injured party opportunity to recover full compensation on account of loss due to inability to labor in whole or in part, and is all he is entitled to on this account, unless it is sought to recover exemplary damages. This rule as to beginning the allowance for the impairment of the power to earn money at the time that the allowance for loss of time ends, in order to prevent the assessment of double damages, when there is a claim for lost time as well as impairment, has been frequently recognized as correct by this court in different forms of expression, although the matter may not have been put in the language here employed. This is illustrated in the opinion in the case of L. & N. R. Co. v. Barrickman, 104 S. W. 273, There the jury was instructed that they might find for the plaintiff "the value of the time lost by him, if any, by reason of the injury, if any, or which it is reasonably certain he will hereafter lose as a direct result of the injury * * * as well as for any permanent reduction of his power to earn money by reason of said injuries not exceeding in all the sum claimed in the petition." In an-

swering the criticism that under this instruction the jury could award double damages, the court said:

"Of course the same item of damage should not be allowed twice. The meaning of the instruction is that the plaintiff should have compensation for his lost time while sick and for any permanent reduction of his power to earn money thereafter. The jury could not have understood that, in fixing compensation for permanent reduction in power to earn money, the time plaintiff lost while laid up was to be considered. This was temporary disability, and might be much greater than the permanent reduction of his power to earn money. The permanent reduction of the power to earn money refers to the state of facts existing after the temporary condition has passed away."

The instruction given in the Barrickman case was approved in L. & N. R. Co. v. Logsdon, 114 Ky. 746; C. N. O. & T. P. Ry. Co. v. Silvers, 126 S. W. 120; South Covington & Cincinnati Ry. Co. v. Core, 29 Ky. Law Rep. 836; City of Georgetown v. Groff, 136 Ky. 663; Cumberland Telephone & Telegraph Co. v. Overfield, 127 Ky. 548, and many others.

And so if the petition charges in appropriate language that the injury is permanent, and that there is a permanent impairment of the power to earn money, and in addition seeks to recover damages for lost time, and the sum expended in effecting a cure, and the evidence shows that the expenditure for medical purposes and the claim on account of lost time ended before the trial, the jury should be instructed to allow the plaintiff such a sum as they may believe from the evidence will fairly compensate him for the value of the time lost, if any, by reason of the injury, for the amount expended if any in effecting a cure, for physical and mental suffering, if any, endured by him or that it is reasonably certain he may endure as a direct result of the injury, as well as for any permanent reduction of his power to earn money, not exceeding the amounts claimed in the petition But if requested, the court should add that the allowance, if any, for impairment of power to earn money should begin when the allowance if any for time lost ended. If the injury is permanent, and the plaintiff at the time of the trial is totally disabled from performing any labor or service, but will ultimately fully recover except as to the permanent injury, the instruction if the pleadings and evidence authorize it should permit the jury to allow

such a sum as the plaintiff has expended and will necessarily expend in the future in effecting a cure, and the value of the time lost, up to the trial, as well as the time that will be necessarily lost thereafter, and in addition thereto compensation for mental and physical suffering, and permanent impairment of the power to earn money, the allowance for impairment to begin when the allowance for lost time, if any is made, ends. If it is shown that the injuries complained of resulted in loss of time and in the temporary impairment of the power to earn money, and that the plaintiff in the near future will be fully restored, he is entitled if the pleadings and evidence warrant it to compensation for mental and physical suffering, expense incurred for medical purposes, time lost, and in addition thereto compensation for the temporary impairment of the power to earn money until a cure has been completely effected, the allowance for impairment to begin when the allowance for lost time ends.

Wherefore the judgment is reversed, with directions for a new trial in conformity with this opinion.