## Carnes et al. v. Day.

January 14, 1949.

164

James S. Lackey and G. Murray Smith, Jr., for appellants.

Warfield Z. Miller for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

On the morning of January 2, 1947, Nathan Day went to the home of J. H. Starnes, a neighbor, apparently for the purpose of ascertaining when Starnes was going to Richmond. It appears that Starnes frequently went to Richmond to see his mother and that Day, who had no automobile, oftentimes accompanied him. Day's daughter had been suffering with earache for several days and Day was desirous of taking her to Richmond to see an ear specialist. This seems to have prompted the inquiry as to when Starnes was going to Richmond. Starnes informed Day that he intended to go the following day but instead he would go that day. Starnes and his wife then drove by in their automobile and picked up Nathan Day, his wife, and daughter, and the five of them proceeded to Richmond, arriving there sometime about 11:00 o'clock. They left Richmond on their return trip about 5 o'clock in the afternoon.

When about 4½ miles out of Richmond, traveling South on U. S. Highway 25, a Ford truck owned by appellant, T. J. Carnes, and driven by appellant, Walter Hawkins, collided with the car driven by Starnes. As a result of the accident Day suffered a fractured pelvis and other painful injuries to his person. He was taken

to the Pattie A. Clay Infirmary in Richmond where he was treated by Dr. Hugh Mahaffey. After 9 days he was transferred to the Berea College Hospital where he stayed for a period of 9 days. He was then returned to his home where he remained in bed for a period of 5 weeks.

J. H. Starnes and his wife received some minor cuts and bruises. Walter Hawkins, the driver of the Ford truck was not injured.

Nathan Day brought suit against J. H. Starnes, T. J. Carnes, individually, and doing business as Hellard Ridge Coal Company, and Walter Hawkins, wherein he alleged that he was a guest in the automobile of J. H. Starnes and that his injuries resulted from the concurrent negligence of the operator of the automobile and the operator of the coal truck.

The codefendant, J. H. Starnes, filed answer denying the allegations of the plaintiff, Nathan Day, and also pleading contributory negligence. He filed also a cross-petition against T. J. Carnes and Walter Hawkins, alleging their negligence to be the sole cause of the accident and asked judgment against them for damage to his car.

Carnes and Walter Hawkins filed answer denying the allegations of the plaintiff, pleading contributory negligence against Nathan Day, and also alleging a joint enterprise on the part of Day and Starnes, and by counterclaim alleged that the negligence of J. H. Starnes was the sole cause of the accident and asked for damages to his truck, as a result of the accident, in the sum of $800.

The cause was tried and the jury found for the plaintiff, Nathan Day, against the defendants, T. J. Carnes, individually and doing business as the Hellard Ridge Coal Company, and Walter Hawkins, allowing the sum of $142.60 for doctors and hospital bills, and $5,000 for injuries. It also found against Walter Hawkins and T. J. Carnes on the cross-petition of J. H. Starnes, the sum of $440 for damages.

Appellants are here seeking reversal of the judgment in favor of Day upon the following grounds: (1) Refusal of court to direct a verdict for them at the close

of all the evidence. (2) Error in refusing to give instructions offered by appellants and giving improper instructions. (3) Excessiveness of damages awarded.

At the close of the evidence appellants moved the court to direct the jury to find for them. They insist that the court erred in overruling this motion. They contend that plaintiff failed to show negligence upon their part, and because of such failure the court erred in submitting the case. In support of this position they cite Stacey v. Stoner, 260 Ky. 848, 86 S. W. 2d 1006, 1007, wherein we said:

"* * * To authorize the submission of a case to the jury, the burden is on the plaintiff to show (a) that the defendant was negligent, and (b) that such negligence was the proximate cause of the injury."

The theory seems to be based upon the testimony of Nathan Day to the effect that he knew nothing about how the accident occurred as he was not observing the highway at the time. However, we need only call attention to the fact that appellee, Day, charged concurrent negligence of both the driver of the car in which he was riding and the driver of the truck of appellant.

Appellants take the position, and introduced evidence in support thereof, that the coal truck was being operated on the right side of the highway and that the driver thereof was exercising ordinary care. They insisted that the sole cause of the accident was the negligence of Starnes, the driver of the automobile.

The driver of the automobile contended that his car was being operated on its right side of the road and that the sole cause of the accident was the negligence of appellants. He testified that the truck, after coming around the curve, pulled to its left and struck his automobile while he was driving straight down the road. The evidence shows that after the accident the automobile stopped on the east side of the road about 135 feet from the point of impact and the coal truck traveled 400 feet.

Argument is advanced that it appears more logical to conclude from the facts that Mr. Starnes became blinded by the lights of the truck because of the rain and his not having a windshield wiper, and the fact that he drove straight ahead and did nothing more than just

hold his car to the right side of the road throws the case into the realm of speculation as to how the accident really happened. However, there was direct conflict in the evidence and it necessarily becomes a question for the jury.

It is next insisted that it was error to refuse to give the instructions offered by appellants and that improper instructions were given. First, it is contended that the court erred in giving Instruction No. 2, which reads:

"The court further instructs the jury that at the time and place mentioned in the evidence that it was the duty of the plaintiff, Nathan Day, to exercise ordinary care for his own safety."

It is insisted that this instruction is lacking in concreteness and does not bring home to the jury in intelligible form the main defense relied upon. Apparently, appellants are insisting, according to their own offered instructions, that it was the duty of Day to keep a lookout ahead and to warn the driver of the car of the approach of other vehicles and should be charged with the same degree of care as if he were the operator of the car. Such is not the rule. In Epperson v. Wright, 277 Ky. 205, 126 S. W. 2d 123, we said:

"But it must be remembered that the authority over and the responsibility for the management of the car rests on the driver. Therefore, the law does not hold a passenger equally bound with the driver to watch for the approach of other traffic."

True, in the case of New York Indemnity Co. v. Ewen, 221 Ky. 114, 298 S. W. 182, relied upon by appellants, we held that denial of a concrete instruction under the circumstances therein was reversible error. However, in that case there was a sharp issue as to knowledge upon the part of Ewen that the driver of the car in which he was riding was a notoriously reckless driver. Here there is no evidence that Starnes was a reckless driver. On the contrary there is evidence that he was a safe and careful driver. Further there is no evidence that Day acquiesced in the negligent driving of his host, or that he could have done anything to avoid the accident. While he may not ignore obvious or imminent dangers when he has an opportunity to acquire knowl-

edge of them, a guest in an automobile is required to exercise only ordinary care for his own safety. Stephenson's Adm'x v. Sharp's Ex'rs, 222 Ky. 496, 1 S. W. 2d 957, and Haller's Pet Shop v. Pearlman, 253 Ky. 130, 69 S. W. 2d 9. Instruction 2 complained of, followed by Instruction 3, which stated that if the jury believed Nathan Day failed to exercise ordinary care for his own safety and such failure contributed to, caused, or helped to bring about the collision and the injuries, then the verdict should be for the defendants, certainly completed, under the facts of this case, the necessary instructions relative to the duties of Day.

Appellants next complain of Instruction No. 7, which reads:

"If you find for the plaintiff, Nathan Day, on his petition, you should award him such sum in damages as you may believe from the evidence will fairly and reasonably compensate him for mental and physical suffering, if any, which resulted, or which you may believe may reasonably be expected to result from said injuries not to exceed the sum of $20,000.00; the sum of $142.60 for doctors and hospital bills; the sum of $5,000.00 for his loss of power to labor and earn money; in all a total sum not to exceed $25,142.60."

They insist that there is no evidence of probative value to give that part of the above instruction which authorized the jury to award the plantiff the sum of $5,000 for his loss of power to labor and earn money.

Appellants cite and rely upon Black v. Bishop, 306 Ky. 524, 207 S. W. 2d 22, in support of their position. There an instruction was given similar to the one in the instant case and, based upon the evidence therein, we held the instruction to be erroneous and reversed the case. In that case we reiterated the rule as laid down in Augustus v. Goodrum, 224 Ky. 558, 6 S. W. 2d 703, 704, which is:

"The evidence of permanency of the injury must be direct, positive, and satisfactory."

In the Augustus v. Goodrum case we find this statement:

"There is no evidence in this case that plaintiff's

power to earn money has been permanently impaired, but all the evidence is to the effect that the impairment, if any, is temporary.''

That is not the situation in the instant case. Here we have a fractured pelvis and injuries to the penis and scrotum. Day himself says since the accident he experiences extreme difficulty in urinating. He stated positively that he had no such difficulty before the accident. He says he cannot walk as well and cannot work as before.

Dr. Robinson testified that X-ray examination showed a fractured pelvis and an enlarged prostate. While he did not testify at length as to the possibility of connecting this prostatic condition with the accident, he said he saw no reason why they should be connected, but that the jar and injury would cause the condition to be more painful if it had pre-existed. However, we have the direct testimony of the plaintiff that prior to the accident he had experienced no difficulty there and that since the accident he had.

Dr. Mahaffey in his testimony said that he had examined Day and had X-ray pictures made which revealed a fractured pelvis. He stated there were also considerable bruises around the scrotum and penis. In answer to the question as to how long it would take these injuries to heal, he said: ''Different periods of time. It would take the bone about twelve weeks to knit solid and take several more weeks for motion to be established so the patient can get about with comfort. Some of them have limit of motion for months, maybe years.'' Thus, it will be observed that we do not have the state of facts here as in the cases relied upon by appellants. Had the judgment been based entirely upon loss of power to earn money, it might possibly be true that there was insufficiency of evidence as to the permanent impairment of power to earn money to support such an amount, but it will be observed that the jury in its verdict awarded Mr. Day $5,000 for injuries. Whether any part of that was for permanent impairment of power to earn money we cannot and it is not necessary to say.

Argument has been advanced that Mr. Starnes and Mr. Day were engaged in a joint enterprise. The evidence does not support this position. In Alva West &

Co. v. Corwin, 273 Ky. 557, 117 S. W. 2d 192, 194, the rule is clearly set out. There we said:

"To constitute a joint enterprise within the rule that the negligence of one party is imputable to the others, persons riding together in an automobile must have a community of interest in the object and purpose of the undertaking, and an equal right to direct and govern the movement and conduct of each other in respect thereto. Dorris v. Stevens' Adm'r, 266 Ky. 602, 99 S. W. 2d 755; Campbell v. Campbell, 104 Vt. 468, 162 A. 379, 85 A. L. R. 626. It must not be overlooked that the car belonged to Dickinson, and was being driven by him at the time of the collision. While the boys may have been on a common mission, there is no evidence whatever that they were jointly controlling the movements of the car, or that appellee had any right, or exercised any control over the operation of the car. In the circumstances, the journey was not a joint enterprise, and Dickinson's negligence, if any, was not attributable to appellee."

There is no merit in this contention.

We come finally to the question of excessiveness of damages. Clearly there is substantial evidence to show that there was intense and excruciating pain and suffering. Mr. Day had a fractured pelvis and very painful injuries to other portions of his body. He was confined in the hospital and in bed at his home for a period of 7½ weeks. His doctors stated it would take about 12 weeks for the bone to knit and several more weeks for motion to be established so he could go about with comfort. He was yet unable to work at the time of the trial. The amount of damages to be assessed in such cases clearly falls within the province of the jury. In Aetna Oil Co. v. Metcalf, 300 Ky. 817, 190 S. W. 2d 562, 563, we said:

"There is no rule of law fixing a monetary measure of damages for pain and suffering in personal injury cases. But the matter must be left to the sound discretion of the jury, whose verdict will not be disturbed unless it appears to have been influenced by partiality or prejudice, or that the jury have been misled as to the merits of the case."

The total sum sought was over $25,000. It cannot be said that a finding of $5,000 resulted from passion and prejudice. Especially is this so where the proof as to the injuries and pain and suffering is amply sufficient to support a judgment in that amount.

Wherefore, the judgment is affirmed.