# Louisville & Nashville Railroad Company v. Logan's Administratrix.

(Decided November 27, 1917.)

## Appeal from Hopkins Circuit Court.

1. Railroads—Death of Person on Track—Licensee—Question for Jury.—In an action for damages for death, evidence of the habitual use of the railroad company's track at the place of the accident by such a large number of persons with the knowledge and acquiescence of the company examined and held sufficient to make it a question for the jury whether the company owed decedent the duty of keeping a lookout, of having its engine under reasonable control, and of giving timely warning of its approach.

2. Railroads—Death of Person on Track—Proximate Cause—Evidence.—In an action for death against a railroad company, evidence examined and held that it was for the jury to say whether the decedent's death was caused by his being struck by defendant's engine and thereby thrown under certain cars operated by a mining company on an adjoining track.

3. Damages—Punitive Damages—Instructions.—A punitive damage instruction is not authorized unless the evidence shows a reckless or wanton disregard of the safety of others.

4. Damages—Punitive Damages—Instructions.—A punitive damage instruction that contains a mandatory direction to award such damages in event the grounds therefor existed, instead of leaving the question to the discretion of the jury, is error.

5. Damages—Punitive Damages--Instructions—Prejudicial Error.—In an action for death, an unauthorized instruction on punitive damages is prejudicial error where the verdict is for $10,000 and the court is therefore unable to say that no punitive damages were included therein, but only compensatory damages were awarded.

6. Trial—Instructions—Finding in Defendant's Favor.—In an action for death, the defendant is entitled either to the converse of a given instruction or to another instruction authorizing a finding in its favor.

7. Trial—Instructions—Issue.—The instruction should submit the issue presented by the pleadings and proof.

RUBY LAFFOON, C. J. WADDILL, and BENJAMIN D. WARFIELD for appellant.

GORDON, GORDON & MOORE, LETCHER R. FOX and THOMAS E. FINLEY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Mrs. Elnora Logan, as administratrix of Manson Logan, deceased, brought this suit against the Louisville &

Nashville Railroad Company, to recover damages for his death. From a verdict and judgment in her favor for $10,000.00, the company appeals.

Earlington is a city of 4,000 inhabitants, and certain shops of the Louisville & Nashville Railroad Company are located there. Along the eastern edge of the railroad yard, the St. Bernard Mining Company has a mine track which is located within a few feet of, and parallel to, the railroad company's main track. Connected with the mine track are certain switch tracks, and both the mine track and the switch tracks pass beneath the tipple of the mining company's number 9 mine, which is situated within the limits of the city. On the day of the accident, two of the mining company's employes were engaged in letting down two coal "gons" to be loaded at the tipple. This was done by hitching two mules to the front end of the two cars and starting the cars down grade after the brakes had been loosened. The mules were then taken away and the cars would roll down of their own momentum. One of the employes was on the front end of the front car keeping a lookout, and the other had charge of the mules. While these cars were being moved, one of the railroad company's engines was backing towards the depot. According to plaintiff's evidence, the engine was moving rapidly, no warning of its approach was given and those in charge of it were not keeping a lookout.

John Tandy, who was some distance south, says that he saw the engine strike the decedent. His body was found on the mining company's adjoining track. The employes of the mining company say that he was not seen on the mining company's track prior to the accident, and that only the rear trucks of the rear car passed over him. There was further evidence to the effect that the place where decedent was struck was between the depot and the mining company's tipple, and that the depot was the business center of the town. The tracks from the depot to the tipple ran parallel with the public street on which were situated several residences. In the immediate neighborhood, 600 or 800 men were employed. These men and their families used the track from the tipple to the depot not only as a walkway, but for crossing purposes.

According to the defendant's evidence, the bell on the engine was being rung as it approached the place of the accident. The decedent was not on the railroad company's track and was not struck by the engine. On the

contrary, his body was seen under the coal company's cars before the engine reached the place of the accident.

1.  In view of the fact that the judgment must be reversed for another reason, we deem it unnecessary to pass on the propriety of the trial court's refusal to grant the defendant a continuance on account of the absence of its witness, Paul Moore, Jr.

2.  Without reviewing the evidence at length, we conclude that there was sufficient evidence of the habitual use of the railroad company's track at the place of the accident by such a large number of persons, with knowledge and acquiescence of the company, as to make it a question for the jury whether the company owed decedent the duty of keeping a lookout, of having its engine under reasonable control, and of giving timely warning of its approach.

3.  We also conclude that it was for the jury to say whether decedent's death was caused by his being struck by defendant's engine and thereby thrown under the mining company's cars.

4.  Part of instruction No. 1, giving the measure of damages, is as follows:

"If the jury find for the plaintiff, they will award to the plaintiff such a sum in damages as they believe from the evidence will reasonably compensate the estate of said Manson Logan for the destruction of his power to earn money, and if they shall believe from the evidence that the negligence, if any, of the agents and servants of the defendant in charge of said engine and cars mentioned by the witnesses was gross, then in addition to compensatory damages they will award the plaintiff exemplary damages, but the jury's award shall not in any event exceed the sum of $25,000.00, the amount claimed in the petition."

This instruction is erroneous for two reasons. In the first place, the evidence fails to show such a reckless or wanton disregard of the safety of others as to authorize such an instruction. L. & N. R. R. Co. v. Wilkins, Guardian, 143 Ky. 572, 136 S. W. 1023.

In the second place, the instruction itself is not in proper form because it gave to the jury a mandatory direction to award punitive damages in the event the grounds therefor existed, instead of leaving the matter to their discretion. L. & N. R. R. Co. v. Cottongim, 31 Ky. L. R. 871, 104 S. W. 280.

But it is insisted that this instruction is not prejudicial because the damages awarded were not even sufficient as compensatory damages. While it is true that we have refused to reverse judgments where instructions authorizing punitive damages were improperly given, an examination of the cases will show that this rule has been applied only in rare and exceptional instances, where the amounts of the verdicts awarded were so small as to leave no doubt that only compensatory damages were awarded. C. & O. Ry. Co. v. Conley, 136 Ky. 601, 124 S. W. 861; I. C. R. Co. v. Mays, 142 Ky. 382, 134 S. W. 436; I. C. R. Co. v. Moss's Admr., 142 Ky. 658, 134 S. W. 1122. Our reports show that juries not infrequently fix the damages in death cases where the decedent's earnings and expectancies were fully as great as those of the decedent in this case, at sums varying from $4,000.00 to $8,000.00. That being true, we conclude that where punitive damages are authorized, a verdict for $10,000.00 is entirely too large to permit us to say with reasonable certainty, that no punitive damages were included therein, but only compensatory damages were awarded. It follows that the giving of the punitive damage instruction was prejudicial error.

5. Instruction No. 1 authorized a finding in favor of the plaintiff. The court did not give the converse of that instruction or any other instruction authorizing a finding in favor of the defendant. In view of another trial, the court will give the defendant at its option, either the benefit of the converse of instruction No. 1, or an instruction similar in effect to that offered by the defendant.

6. It is proper in this connection to call the attention of the trial court to the fact that instruction No. 1 submitted the question whether decedent was run down and killed by defendant's train, whereas the issue raised by the pleadings and proof was whether he was struck by the defendant's engine and thrown under the mining company's cars and thereby killed. On another trial the court will amend instruction No. 1 so as to present the latter issue.

Judgment reversed and cause remanded for a new trial consistent with this opinion.